# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Daniel Galindo, | ) |
| | ) NO. 08 C 5233 |
| Plaintiff, | ) |
| | ) Hon. Judge Pallmeyer |
| v. | ) |
| | ) |
| Det. Michael J. O'Donnell, et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' POST-TRIAL MOTION

Pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure, Defendants, Michael O'Donnell ("O'Donnell"), Anthony Amato ("Amato"), Timothy O'Brien ("O'Brien"), and Michael Kelly ("Kelly"), by their attorneys, Brandon Gibson, Jordan Marsh and Gail L. Reich, present this motion for judgment as a matter of law and for judgment notwithstanding the verdict, and in support thereof state as follows:

## Background

This matter was tried before this Court from August 5, 2011 through August 15, 2011, wherein Plaintiff Daniel Galindo ("Plaintiff" or "Galindo") alleged he was falsely arrested, maliciously prosecuted, that the Defendants conspired to violate his constitutional rights and intentionally inflicted emotional distress upon him.

In support of his claims, Plaintiff presented testimony that in the early morning hours of February 6, 2006, Jacob Rozanski ("Rozanski") was driving his car, a black Cadillac sedan, westbound on 63rd Street toward Central Avenue in the City of Chicago when the passenger in Rozanski's car leaned out the window and shot at a Chevy Suburban driven by Andrzej

1

Bryniarski ("Bryniarski") as it sat at a red light at Central Ave. Tomasz Chraca ("Chraca"), the passenger in the Suburban, was struck once in the left thigh; Bryniarski was unharmed. Plaintiff denied being the shooter. (Excerpt of Michael O'Donnell's trial testimony, August 8, 2011, attached hereto as *Exhibit A* at pp. 61-63.)[1] Plaintiff also presented testimony that a few weeks after the shooting, Rozanski had been found with the gun used in the shooting during the execution of an unrelated search warrant wherein he, Carl Crawford, ("Crawford") and Patrick Parker ("Parker") were arrested. (*Id.* at pp. 6-7; 109-112).

O'Donnell testified that when he received information that the gun found in Rozanski's possession at the time of his arrest had been linked to the shooting, he compiled photo arrays containing the photos of Rozanski, Parker and Crawford and requested that Chraca and Bryniarski view them to determine whether they could identify anyone as the shooter. *Exhibit A* at pp. 11-14; 113-114; 120-125. Although neither Chraca nor Bryniarski were able to positively identify the shooter in any of the photos, both told O'Donnell that Crawford "resembled" the shooter. *Id.* at pp. 15-27; 120-125. With this information, O'Donnell requested that Amato bring Rozanski and Crawford in for questioning. *Id.* at pp. 28; 126. Amato was unable to locate Crawford, but Rozanski voluntarily accompanied Amato into Area 1 to speak with O'Donnell. *Id.* at 30; 127-28.

When asked if he knew anything about the shooting and told that O'Donnell believed Crawford had been involved, Rozanski told O'Donnell that Crawford was not present, but that Galindo was in fact the shooter. *Id.* at pp. 31-32; 129. Rozanski initially told O'Donnell that he

---

[1] Due to its size, Exhibit A has been broken up into two parts. The second is attached as Exhibit A1, but both will be referred to here as Exhibit A. The page numbers remain sequential.

2

observed Galindo in a car ahead of him, and he'd seen him shoot from another car. *Id.* at 129. Rozanski told O'Donnell he had been following behind Galindo in his car, and that his girlfriend was with him. *Id.* at pp. 50; 129. O'Donnell asked for his girlfriend's contact information because Rozanski indicated that she was also a witness to the shooting, but Rozanski refused to give him the information. *Id.* O'Donnell then left the room and returned a short time later. *Id.* at 130. When O'Donnell returned, Rozanski admitted to being the driver of the car. *Id.* at 131. At that point, O'Donnell asked Rozanski to tell him what happened. *Id.* Rozanski then told O'Donnell that he would tell him the truth—he was the driver, they were in Rozanski's car, a black Cadillac sedan, Galindo was the passenger, and his girlfriend had not been with them. *Id.* at pp. 42. They were on their way to buy cigarettes and Galindo told Rozanski to ride up by the Suburban. *Id.* at 132. Rozanski explained that he was driving Westbound on 63rd Street in Chicago and that when the car reached Central Ave., Galindo leaned out and opened fire on a Chevy Suburban with a snowplow attached to it in the right lane and that there were two white people in the car. *Id.* at pp. 33-34; 132. Rozanski believed that Galindo knew the occupants of the Suburban. *Id.* at p. 132. At that time, Galindo yelled, "two-six" (a gang slogan) and fired approximately 10 shots. *Id.* Rozanski was also able to identify Galindo in a photograph. *Id.* A few weeks later, Galindo asked Rozanski to "hold onto" the gun for him, to which Rozanski agreed. *Id.* at pp. 42; 141. Shortly thereafter, he was arrested when he was found in possession of the gun used in the shooting. *Id.* at pp. 10-11.

      The information that Rozanski provided regarding the shooting matched the information that O'Donnell knew from police reports he had reviewed during his investigation in order to familiarize himself with the incident: Chraca and Bryniarski were sitting in a Chevy Suburban

3

with a snow plow attached to it at the corner of 63rd St. and Central Ave., that approximately 10 shots were fired at the left side of the suburban from a person leaning out of a black car, that the shooter was yelling. *Id.* at pp. 47; 130-133. With this information, O'Donnell believed that Galindo was the shooter, he was a suspect and so he asked Amato to bring Galindo in. *Id.* at pp. 56-57; 142-143. Amato told O'Donnell that he was planning to execute a search warrant at Galindo's home the following day. *Id.* at pp. 57-59; 142. The next day, Amato and Kelly, along with their team, executed a search warrant at Galindo's home and arrested Galindo. Several hours later, O'Donnell brought Galindo from the 2nd District lockup to the Area 1 detective division to be placed in lineups to be interviewed and placed in a lineup to be viewed by Bryniarski and Chraca. *Id.* at pp. 145-146. Galindo denied involvement, and denied knowing Rozanski or Crawford. *Id.* at p. 146. Both Chraca and Bryniarski viewed live lineups and identified Galindo as the shooter. *Id.* at pp. 80-87; 148-151; 153-156.

At the close of Plaintiff's case, Defendants moved for a directed verdict on all claims against all Defendants for failure to set forth any supporting evidence. This motion was taken under advisement by the Court. Defendants again moved for a directed verdict once they had completed presentation of their case. Prior to closing arguments, the Court granted Defendants' motion for a directed verdict on Plaintiff's "Brady" and "Due Process/Fair Trial" claims, and granted Defendant Struck's motion for a directed verdict on all claims. The Court reserved ruling on the Defendants' motion as to the remaining claims against the remaining defendants after closing arguments.

The following claims were submitted to the jury: 1) false arrest by Defendants O'Donnell, Amato, and Kelly; 2) malicious prosecution by Defendants O'Donnell and O'Brien; 3)

4

conspiracy by Defendants O'Donnell, O'Brien, Amato, Struck and Kelly; and 4) intentional infliction of emotional distress by Defendants O'Donnell, O'Brien, Amato and Kelly. (See Verdict form, attached hereto as Exhibit B.)

The jury was instructed that the false arrest claim required the Plaintiff to prove by a preponderance of the evidence that the Defendants arrested him, but did not have probable cause to do so. (See Jury Instructions, attached hereto as Exhibit C.) Probable cause was defined for the jury as, "if, at the moment the arrest was made, a prudent person would have believed that the Plaintiff had committed the crime." *Id.* The jury was further instructed to consider what the Defendants knew and what reasonable trustworthy information Defendants had received at the time the arrest was made. *Id.* The jury was also instructed that the complaint of an informant alone is insufficient if it would lead a prudent person to be suspicious, but that an officer may not close his eyes to facts what would help to clarify the circumstances of an arrest. *Id.*

The jury was instructed that the conspiracy claim required Plaintiff to prove by a preponderance of the evidence that there was an express or implied agreement among Defendants to deprive plaintiff of his constitutional right to be free from false arrest, and that there was an actual deprivation of those rights in the form of overt acts in furtherance of the agreement. *Id.*

The jury found in favor of the Defendants and against the Plaintiff on the false arrest, malicious prosecution, and intentional infliction of emotional distress claims. The jury found in favor of Plaintiff and against O'Donnell, O'Brien, Amato, and Kelly on the conspiracy claim.[2] (See Verdict form, attached hereto as Exhibit C.)

The jury awarded Plaintiff $45,000 in compensatory damages and punitive damages

---

[2] The jury found in favor of Struck on Plaintiff's conspiracy claim.

against various Defendants totaling $15,000. *Id.*

Defendants O'Donnell, O'Brien, Kelly and Amato move pursuant to Federal Rules of Civil Procedure 50 for Judgment Notwithstanding the Verdict in their favor on the conspiracy claim, and under Federal Rule of Civil Procedure 59, to alter or amend the judgment by entering judgment in favor of the defendants on all counts. Defendants also renew their motion for Judgment as a Matter of Law as to the Conspiracy claim.

## **Standard of Review**

In ruling on a Rule 50(b) motion, the Court does not re-weigh the evidence or make credibility determinations. *Caletz ex re. Estate of Conlon v. Blackmon*, 476 F.Supp.2d 946, 951 (N.D.Ill., 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Rather, the question is "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Erickson v. Wisconsin Dept. Of Corrections*, 469 F.3d 600, 601 (7th Cir. 2006) (quoting *Mack v. Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002). The verdict should be overturned only if no reasonable jury could have found in favor of the prevailing party. *See Erickson*, 469 F.3d at 601.

"When reviewing a Rule 59(a) motion, we defer to the district court and reverse only if it has abused its discretion. In doing so, we determine whether the clear weight of the evidence is against the jury verdict, the damages are excessive, or for some other reason the trial was not fair to the moving party." [Citation omitted.] *Harrison v. Dean Witter Reynolds, Inc.* 79 F.3d 609, 614 (7th Cir.1996). "Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact, and enables the court to correct

its own errors and thus avoid unnecessary appellate procedures." [Citation omitted]. *Divane v. Krull Elec. Co., Inc.* 194 F.3d 845, 850 (7th Cir. 1999).

## Argument

Because the jury unanimously concluded that Defendants did not falsely arrest Plaintiff, there is no constitutional deprivation, and consequently, no conspiracy. *Cefalu v. Village of Elk Grove,* 211 F.3d 416, 423 (7th Cir. 2000.) ("Because the jury exonerated the defendants of any substantive constitutional violation, the conspiracy claim necessarily falters under this circuit's precedent.") As such, Defendants are entitled to judgment as a matter of law on the conspiracy claim.

Independent of the jury's verdict in favor of Defendants on the false arrest claim, Plaintiff failed to establish evidence of a lack of probable cause for his arrest. In fact, probable cause was unquestionably established. Finally, there was no evidence of an agreement to deprive Plaintiff of the right to be free from false arrest – as required for a conspiracy claim – thus, the jury's verdict on the conspiracy claim is against the manifest weight of the evidence and Defendants are entitled to judgment notwithstanding the verdict.

### The Jury's verdict in Favor of Defendants on the Underlying Substantive Claim of False Arrest, Compels Judgment for Defendants on the Derivative Conspiracy Claim.

Because the civil conspiracy claim is not an independent cause of action, and because the jury found in favor of the defendants on the underlying constitutional tort, the conspiracy claim must fall. *Cefalu v. Village of Elk Grove,* 211 F.3d 416, 423 (7th Cir. 2000.) ("Because the jury exonerated the defendants of any substantive constitutional violation, the conspiracy claim

7

necessarily falters under this circuit's precedent.")

The Third Circuit has faced circumstances materially similar to these, and its holdings and reasoning provide a road map for this court. In *Acumed LLC. v. Advanced Surgical Services, Inc.,* 561 F.3d 199 (3rd Cir. 2009), a manufacturer of medical devices, Acumed, and one of its distributors, sued Acumed's former distributor, alleging, *inter alia,* tortious interference with existing or prospective contractual relationships. The jury returned a verdict in favor of the plaintiffs on the claim that the defendant had tortiously interfered with existing or prospective contractual relationships with plaintiffs' customers, but rejected the plaintiff's claim that the defendant had tortiously interfered with the plaintiffs' contractual relationship between each other, and rejected all other claims by the plaintiffs that had not been previously dismissed by the district court. *Id.* at 209. The district court denied the defendant's motion for judgment as a matter of law on the tortious interference verdict in favor of plaintiffs, and the defendant appealed.[3]

According to the Third Circuit, the jury found that the plaintiffs "did not prove their cause of action predicated on appellant's allegedly fraudulent conduct. Appellees thus did not establish that appellant was independently liable to them for that conduct." *Id.* at 216. The Third Circuit went on to hold that, "[i]n view of the jury's determination that the evidence did not support a verdict that appellant's conduct was independently actionable, we conclude as a matter of law that the tortious interference verdict cannot stand against appellant, even if without the adverse

---

[3]*Acumed* involves a somewhat complex set of facts and legal developments. Defendants in the instant matter will refer only to those facts and legal developments relevant to the issues here.

8

verdict appellees' case would have survived appellant's Rule 50(b) motion." *Id.*

In reversing the district court's denial of the defendant/appellant's motion for judgment as a matter of law, the court noted that

> [a]ppellant in this case was entitled to a judgment as a matter of law not solely, if at all, because the verdict was internally inconsistent...but rather because the verdict for tortious interference against the appellant cannot stand without appellees showing that appellant had committed a particular underlying tort, precisely what we held that *Boyanowski* [*v. Capital Area Intermediate Unit, 215 F.3d 396* (3d Cir.2000)] required. That is, it is not that some element of the jury's fraud finding is legally irreconcilable with an element of the tortious interference with contractual relationships verdict, *but rather that the jury rejected any underlying tort claims that could have served as the basis for a subordinate tortious interference claim verdict.* Thus, the verdict in this case is better characterized as reflecting conclusions that are internally incompatible rather than conclusions that are inconsistent.

*Id.* at 218 (emphasis added).

While the allegations are obviously different, the principle remains the same: when one claim is dependent on an underlying tort or constitutional violation, it cannot survive when the jury rejects the other – substantive – claim upon which it depends, even after a jury verdict for the plaintiff.

In another Third Circuit case, a jury returned a verdict in favor of the plaintiff on her claim that the defendants conspired to prevent her from receiving contracts to drive a school bus. *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 398 (3rd Cir. 2000). However, the jury also returned a verdict in favor of the defendants on the underlying claim of tortious interference with contract. *Id.* The Third Circuit held that, "[i]n light of the jury's finding that the underlying tort did not occur, we conclude that the civil conspiracy claim can not survive." *Id.* (Citations omitted.)

9

The *Boyanowski* court went on to explain that, "'[s]ince liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort.'" *Id.* (citing *Halberstam v. Welch,* 705 F.2d 472, 479 (D.C. Cir. 1983)). Further, "[a] verdict on civil conspiracy should yield to a finding for the defendant on the underlying tort because the cause of action is wholly subordinate to the underlying tort's existence." *Boyanowski,* 215 F.3d at 407. The *Boyanowski* court remanded the case with directions to enter judgment in favor of the defendants on all counts. *Id.*

The circumstances faced by the Third Circuit are materially identical to those at bar: a jury has found for the plaintiff on the derivative claim, while finding for the defendants on the underlying substantive claim. The result should be the same as it was in *Acumed* and *Boyanowski:* judgment should be entered for the defendants on the civil conspiracy claims, just as it should for the remaining claims on which the jury found for the defendants.

The First Circuit has held similarly as well. In *De Feliciano v. De Jesus,* 873 F.2d 447 (1st Cir. 1989), plaintiffs sued their former employer alleging that they were wrongfully terminated. The jury found in favor of the plaintiffs as against the company, but against the plaintiffs as against the individual president of the company. *Id.* at 448. The Eighth Circuit found the verdicts irreconcilable because the only person the plaintiffs claimed to have the authority to fire them was the president, who was exonerated by the jury. *Id.* at 450.

The *De Feliciano* court "examined how other appellate courts have dealt with the roughly analogous "inconsistency" problems, such as where a jury returns verdicts in favor of an

employee defendant, but against an employer whose liability is derivative of the employee's liability, and where, for some reason, the trial court does not resubmit the case to the jury. Most of the decisions favor granting judgment notwithstanding the verdict to the employer defendant." *Id.* at 452. The court followed "the apparent weight of the authority" and held that the employer defendant was entitled to judgment in its favor. *Id.*

It is not only precedent that should guide this Court, but logic and fairness: if the court had found, as a matter of law, that Defendants were entitled to judgment on the false arrest claim, it would have dismissed the conspiracy claim as a matter of course. That situation is analogous to this one. The jury has found that Defendants are entitled to judgment on the false arrest claim, which necessarily means that the jury found that there was probable cause for Plaintiff's arrest. Because the jury found in favor of the Defendants on the only constitutional claim submitted to it, the conspiracy claim should be dismissed as a matter of course, because it cannot stand alone. To hold differently would be to speculate as to why the jury found as they did on the derivative claim of conspiracy. To do that would be to nullify the jury's clear verdict on the core constitutional claim of false arrest. This would disenfranchise the jury's verdict and would deny due process to the Defendants by forcing them to face an allegation – false arrest – on which they have already been vindicated by a jury.

### **Defendants Had Probable Cause to Arrest Daniel Galindo**

The Plaintiff failed to establish a lack of probable cause for his arrest. Indeed, the record unquestionably establishes the presence of probable cause, a fact underscored by – but independent of – the jury's exoneration of Defendants on the false arrest claim. This fact, in and

of itself, compels judgment in favor of Defendants on the conspiracy claim. The undisputed testimony establishes that an eyewitness, Jakub Rozanski, told Defendant O'Donnell that on February 6, 2006, he and Galindo were driving westbound on 63rd Street toward Central Ave. in Rozanski's black Cadillac when Galindo told Rozanski to pull alongside a Chevy Suburban with a snow plow that was waiting in the right lane. Rozanski, believing that Galindo knew the occupants of the Suburban, pulled along side it when Galindo pulled a handgun out of his waistband, leaned out the window, yelled, "two-six,"and fired until the clip was empty. The fact that Rozanski knew the numerous specific details of the shooting which matched the accounts given by Chraca and Bryniarski, coupled with the police reports and forensic information, and Rozanski's admission that he had been the driver, lent additional credibility to Rozanski's statement, and justified O'Donnell's belief in the veracity of the statement.

"The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate. (Citations omitted.) And in crediting the complaint of a reasonable witness or putative victim, the police are under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth." *Beauchamp v. City of Noblesville, Ind.,* 320 F.3d 733, 743 (7th Cir. 2003).

Detective O'Donnell testified that Rozanski's version of the incident was corroborated by the physical evidence. O'Donnell went further in describing Rozanski's knowledge of the facts of the incident: "He knew what kind of vehicle it was. He knew it had a snowplow on it. He knew there were two people in the Chevy Suburban. He knew that they were both white. And based on his description of the entire crime scene... I knew that... Jakub Rozanski had been

12

present at the time of the shooting." (Exh. A at 132-33.)

Detective O'Donnell later testified that he believed that Rozanski was being truthful about the fact that Plaintiff was the shooter. (Id. at 144.) This testimony was unrebutted. To the extent Rozanski changed his story slightly, O'Donnell investigated further and made sure that the details Rozanski provided were corroborated by the physical evidence. The fact that Rozanski had initially told a slightly different story did not affect the credibility of his overall statement. "He was trying to minimize and distance himself," O'Donnell testified. He was about to elaborate, but Plaintiff's attorney objected and the objection was sustained. (Id. at 143.)

There is no question that under *Beauchamp, supra,* Detective O'Donnell had probable cause to arrest Daniel Galindo. He had a reasonably believable eyewitness who stated that Galindo was the shooter. He investigated further by making sure that Rozanski's recollection of the event – not just the shooting – was consistent with the facts as he knew them. This was the clear finding by the jury and it is unassailable. Because Plaintiff failed to establish a lack of probable cause, and thus a constitutional violation, the conspiracy verdict is necessarily against the manifest weight of the evidence and must be set aside.

### **Plaintiff Failed to Prove That Defendants Conspired against Plaintiff**

At trial, Plaintiff offered no evidence to support a finding of liability against O'Donnell, O'Brien, Kelly or Amato on his conspiracy claim. As a matter of law, O'Brien cannot be liable for conspiracy because there was no underlying constitutional claim pending against him, and Plaintiff presented absolutely no evidence or testimony to suggest that O'Brien had any involvement whatsoever in Plaintiff's arrest. Consequently, this Court must enter judgment

13

notwithstanding the verdict in favor of Defendant O'Brien.

Nor did the Plaintiff offer any evidence against O'Donnell, Amato, or Kelly regarding a conspiracy. As discussed above, the evidence of probable cause to arrest Plaintiff was overwhelming and unrebutted.

Independent of the presence of probable cause, Plaintiff failed to present a shred of evidence that the Defendants conspired to falsely arrest him. To establish a prima facie case of civil conspiracy, a plaintiff must show 1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights, and 2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement. *Scherer v. Balkema,* 840 F.2d 437, 442 (7th Cir. 1988). "Necessarily, [a plaintiff] *must be able to prove the agreement.* In short, the agreement and the overt acts causing damage are separate components of a civil conspiracy." *Id.* (Emphasis added.) In the case at bar, Plaintiff never proved the agreement. In fact, he never attempted to adduce any evidence – direct or circumstantial – of an agreement to deprive Plaintiff of his right to be free from false arrest. The mere allegation that the arrest was without probable cause (an allegation refuted by the jury) was all that the Plaintiff submitted to the jury. By implication, according to Plaintiff, there must have been a conspiracy. But this is not the law. *The agreement must be proven. Scherer, supra,* 840 F.2d at 442.

The only evidence on the issue was that O'Donnell reasonably believed that Galindo was the shooter, believed he had probable cause to arrest based upon Rozanski's statements and asked Amato to arrest him. There was no evidence that Kelly had any knowledge of the circumstances amounting to probable cause, so to find that he was somehow involved in a

conspiracy is unsupported and defies logic. The conspiracy verdict as to O'Brien is further proof that the jury was confused about the elements of the conspiracy claim.

Because there was no evidence of an agreement between the Defendants to violate Plaintiff's right to be free from false arrest, the conspiracy verdict was against the manifest weight of the evidence and must be set aside.

For the foregoing reasons, Defendants Michael O'Donnell, Anthony Amato, Michael Kelly and Timothy O'Brien respectfully request that this Court:

1) enter judgment as a matter of law in favor of the moving Defendants and against plaintiff Daniel Galindo as to his conspiracy claim;
2) enter judgment notwithstanding the verdict in favor of the moving Defendants and against Plaintiff on his conspiracy claim.


Respectfully Submitted,

BY: /s/ Jordan Marsh
Jordan Marsh


Attorney No. 6216489
30 North LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 744-8362